UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **DEBORAH A. ROY** | * | **CIVIL ACTION NO. 10-1924** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Deborah Roy, born January 28, 1954, filed applications for disabled widow's benefits and supplemental security income on November 19, 2008, alleging disability as of September 6, 2008, due to arthritis.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of Fed. R. Civ. P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from David Lister, DC, dated September 8, 2008**.[1] Claimant was treated for left-sided neck pain for three months. (Tr. 143). She was taking Aspirin and Ibuprofen for pain. (Tr. 144). She was a little better after treatment, but still had some pain. (Tr. 143).

**(2) Records from University Medical Center ("UMC") dated September 29, 2008 to November 18, 2008**. Claimant complained of upper back pain since June, 2008. (Tr. 152). An MRI showed moderate cervical spondylosis without obvious canal or nerve root compromise. (Tr. 154, 156). Claimant was referred to the Chabert back clinic, but she preferred to wait. (Tr. 154-55).

**(3) Consultative Examination by Dr. R. Dale Bernauer dated February 4, 2009**. Claimant complained of neck and left shoulder pain without radiation. (Tr. 165). On examination, she was 5 feet 7 inches tall, and weighed 140 pounds. She had 25 pounds of grip strength in both hands.

---

[1] Chiropractors qualify as "other sources" under 20 C.F.R. § 404.1513(e) which sources may be considered but are entitled to significantly less weight than "acceptable medical sources." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

Neck examination showed a full range of motion; strong triceps, biceps, grip strength, and 2+ reflexes. The MRI showed some arthritic changes at multiple levels in her neck.

Back examination showed a full range of motion, negative straight leg raising, strong muscles, 2+ reflexes, and normal x-rays. Extremities were normal. (Tr. 165-66).

Dr. Bernauer opined that claimant's main problem was arthritic changes in her neck. He recommended that she not lift greater than 25 pounds, otherwise "she should be able to work at any job."

**(4) Physical Residual Functional Capacity ("RFC") Assessment dated February 17, 2009**. The examiner found that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently. (Tr. 169). She could stand, walk, and sit for about six hours in an eight-hour workday. She had unlimited push/pull ability. She could do all postural activities frequently, except that she could never climb ladders/ropes/scaffolds. (Tr. 170). She could perform all activities of daily living without assistance. (Tr. 173).

**(5) Records from UMC dated May 19, 2009**. Claimant complained of neck and back pain. (Tr. 180). Lumbar spine x-rays showed disk space narrowing at L3-4 down to L5-1 without compression fracture or spondylolisthesis. (Tr.

179).  There was atherosclerotic calcification in the aorta.  The impression was degenerative changes.

**(6) Claimant's Administrative Hearing Testimony**.  At the hearing on September 18, 2009, claimant was 55 years old.  (Tr. 23).  She testified that she was 5 feet 7 inches tall, and weighed 150 pounds.  She had a high school education and some training in respiratory therapy.

Claimant reported that her 17-year-old son, mother, and 92-year-old grandmother lived with her.  (Tr. 23).  She testified that she had daily intermittent pain in her neck and upper left back.  (Tr. 24).  She stated that standing, walking, and sitting for too long made it worse.  She complained that she had to lie down at least four times a day for an hour each time to relieve the pain.  (Tr. 25).

Additionally, claimant reported that she had difficultly with reaching overhead with her left arm.  She stated that her hands and arms went to sleep at night.  She said that she sometimes had difficultly with buttoning and zipping clothes.

Claimant complained that weather changes increased her pain.  (Tr. 27-28).  She also reported headaches.  (Tr. 29).  She took ibuprofen for her pain.

As to activities, claimant testified that she could drive, but not for long distances.  (Tr. 26).  She reported that her mother did most of the cooking,

cleaning, and shopping. (Tr. 26-27). She said that she went to the store to get a gallon of milk or something. (Tr. 27). She stated that she visited friends and family outside of her home occasionally.

**(7) Administrative Hearing Testimony of Jeffrey J. Peterson, Vocational Expert ("VE")**. Mr. Peterson classified claimant's past work as a bartender as light and semi-skilled, a cage cashier as light and unskilled, and a Wal-Mart cashier, as claimant had described it, as medium and unskilled. (Tr. 21-22). The ALJ posed a hypothetical in which she asked the VE to assume a claimant of the same age, education, and work experience, who was limited to a full range of light work. (Tr. 22). In response, Mr. Peterson testified that claimant could do all her past work, except for the Wal-Mart position as she had performed it.

When the ALJ changed the hypothetical to add the requirement that claimant had to lie down twice a day for an hour each time, Mr. Peterson responded that such person could not engage in competitive employment. (Tr. 30).

**(8) The ALJ's findings are entitled to deference**. Claimant argues that the ALJ's decision was not supported by substantial evidence, because she relied on only one class of jobs identified by the vocational expert, without considering her

5

ability to sustain work activities in the light range.  Specifically, she argues that the ALJ ignored the VE's testimony that with the limitations testified to by claimant and supported by the medical evidence in the record, there were no jobs available for claimant to perform.

The ALJ found that claimant had the RFC to perform light work.  (Tr. 13). In support of this finding, she gave controlling weight to the state agency analysis, and adopted that conclusion as it was consistent with the record as a whole and was well-supported by the objective findings.  Accordingly, she determined that claimant was able to perform her past relevant work as a bartender and as a cashier, except for her position as a cashier at Wal-Mart at the medium level of exertion.  (Tr. 13-14).

The undersigned finds that the ALJ's finding is supported by substantial evidence.  Claimant's MRI showed moderate cervical spondylosis without obvious canal or nerve root compromise.  (Tr. 154, 156).  Although she was referred to a back clinic, she preferred to wait.  (Tr. 154-55).  It is well established that the ALJ is not precluded from relying upon the lack of treatment as an indication of nondisability.  *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990); *Chester v. Callahan*, 193 F.3d 10, 12 (1st Cir. 1999) (gaps in the medical record regarding treatment can constitute "evidence" for purposes of the disability determination);

*McGuire v. Commissioner of Social Security*, 178 F.3d 1295 (6th Cir.1999) (gaps in treatment may reasonably be viewed as inconsistent with a claim of debilitating symptoms); *Franklin v. Sullivan*, 1993 WL 133774 (E.D. La. 1993). Additionally, the records show that claimant took only over-the-counter medications for her complaints of pain. (Tr. 29, 144). *See Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling condition).

 Further, on neck exam by Dr. Bernauer, claimant had full range of motion, and strong triceps, biceps, grip strength, and reflexes. (Tr. 165). Back examination showed a full range of motion, negative straight leg raising, strong muscles, 2+ reflexes, and normal x-rays. Extremities were normal. (Tr. 165-66).

 Dr. Bernauer opined that claimant's main problem was arthritic changes in her neck. (Tr. 166). He recommended that she not lift greater than 25 pounds, otherwise "she should be able to work at any job." This opinion is consistent with the RFC assessment, in which the examiner found that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently; could stand, walk, and sit for about six hours in an eight-hour workday; had unlimited push/pull ability; could do all postural activities frequently, except that she could never climb ladders/ropes/scaffolds, and could perform all activities of daily living without

7

assistance.  (Tr. 169-73).  Thus, the ALJ's finding as to claimant's RFC is supported by the evidence and is entitled to deference.

Additionally, claimant argues that the ALJ erred in failing to consider the VE's opinion that she could not engage in competitive employment because she had to lie down twice a day for an hour each time.  (Tr. 30).  However, it is well established that the  ALJ is not bound by VE testimony which is based on evidentiary assumptions ultimately rejected by the ALJ.  *See Owens v. Heckler,* 770 F.2d 1276, 1282 (5th Cir.1985); *Falls v. Apfel*, 2000 WL 329233, *7 (E.D. La.2000).

Here, the ALJ rejected claimant's testimony based on the evidence of record.  As the ALJ's hypotheticals to the vocational expert reasonably incorporated all disabilities of the claimant recognized by the ALJ, and the claimant or her representative had the opportunity to correct deficiencies in the ALJ's question, the ALJ's findings are entitled to deference.  *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from

service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

March 16, 2012, Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE